[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 05-11628

D. C. Docket No. CV-05-00530

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 25, 2005
THOMAS K. KAHN
CLERK

THERESA MARIE SCHINDLER SCHIAVO,
incapacitated ex rel, Robert Schindler and
Mary Schindler, her parents and next friends,

Plaintiffs-Appellants,

versus

MICHAEL SCHIAVO,
as guardian of the person of
Theresa Marie Schindler Schiavo, incapacitated,
JUDGE GEORGE W. GREER,
THE HOSPICE OF THE FLORIDA SUNCOAST, INC.,

Defendants-Appellees.

------------------------
Appeal from the United States District Court for the
Middle District of Florida
------------------------
(March 25, 2005)

Before CARNES, HULL, and WILSON, Circuit Judges.

PER CURIAM:

Our previous decision in this case affirmed the district court's March 22, 2005 denial of the plaintiffs' motion for a temporary restraining order as to the claims raised in the five counts of the initial complaint filed in this case. Schiavo ex rel. Schindler v. Schiavo ex rel. Schiavo, ___ F.3d ___, 2005 WL 648897 (11th Cir. Mar. 23, 2005) (Schiavo I), stay denied, ___ S. Ct. ___, 2005 WL 672685 (Mar. 24, 2005). After that appeal was taken, the plaintiffs filed an amended complaint on March 22, 2005, adding four more counts, and a second amended complaint on March 24, 2005, adding a fifth count.

On the basis of the claims contained in those new counts, plaintiffs also filed a second motion for a temporary restraining order. Like their first motion for a temporary restraining order, this one sought an injunction to require the defendants to transport Theresa Marie Schindler Schiavo to a hospital for restoration of nutrition and hydration and for medical treatment. On the evening of March 24, 2005, the district court held a hearing on the motion and, after working through the night, issued an order earlier today denying the motion. A copy of that order is attached as an Appendix to this opinion. We now have before us the plaintiffs' appeal from the order denying that second motion for a temporary restraining order.

Our prior decision in this case brings into play the law of the case doctrine insofar as issues we addressed in our March 23, 2005 opinion are concerned. "Under the law-of-the-case doctrine, [the resolution of] an issue decided at one stage of a case is binding at later stages of the same case." Toole v. Baxter Healthcare Corp., 235 F.3d 1307, 1313 (11th Cir. 2000). The doctrine operates to preclude courts from revisiting issues that were decided explicitly or by necessary implication in a prior appeal. Luckey v. Miller, 929 F.2d 618, 621 (11th Cir. 1991); see also Burger King Corp. v. Pilgrim's Pride Corp., 15 F.3d 166, 169 (11th Cir. 1994) ("[T]he law of the case encompasses all things decided by necessary implication as well as those decided explicitly." (internal marks and citations omitted)).

Law of the case binds not only the trial court but this court as well. See, e.g., Burger King Corp., 15 F.3d at 169 ("As we have repeatedly recognized, findings of fact and conclusions of law by an appellate court are generally binding in all subsequent proceedings in the same case in the trial or on a later appeal." (internal marks and citations omitted)); Litman v. Mass. Mut. Life Ins. Co., 825 F.2d 1506, 1510 (11th Cir. 1987) (en banc) ("The doctrine is based on the premise that an appellate decision is binding in all subsequent proceedings in the same case . . . ."); Wheeler v. City of Pleasant Grove, 746 F.2d 1437, 1440 (11th Cir. 1984) (per

3

curiam) ("Under the law of the case doctrine, both the district court and the court of appeals generally are bound by findings of fact and conclusions of law made by the court of appeals in a prior appeal of the same case . . . ." (internal marks and citations omitted)); Westbrook v. Zant, 743 F.2d 764, 768 (11th Cir. 1984) ("The doctrine generally operates to preclude a reexamination of issues decided upon appeal, either by the district court on remand or by the appellate court itself upon a subsequent appeal." (internal marks and citations omitted)).  As this Court sitting en banc has explained, "Failure to honor [the] commands [of the law of the case doctrine] can only result in chaos." Litman, 825 F.2d at 1511.

There are a few discrete exceptions to the law of the case doctrine.  It "does not limit the court's power to revisit previously decided issues when (1) new and substantially different evidence emerges at a subsequent trial; (2) controlling authority has been rendered that is contrary to the previous decision; or (3) the earlier ruling was clearly erroneous and would work a manifest injustice if implemented."  Klay v. All Defendants, 389 F.3d 1191, 1197–98 (11th Cir. 2004) (internal marks and citation omitted); see also Wheeler, 746 F.2d at 1440.  None of those exceptions apply here.

Because our previous decision was published, the prior panel precedent rule also applies to any holdings reached in the earlier appeal.  "Under the

4

well-established prior panel precedent rule of this Circuit, the holding of the first panel to address an issue is the law of this Circuit, thereby binding all subsequent panels unless and until the first panel's holding is overruled by the Court sitting en banc or by the Supreme Court." Smith v. GTE Corp., 236 F.3d 1292, 1300 n.8 (11th Cir. 2001); see also United States v. Hogan, 986 F.2d 1364, 1369 (11th Cir. 1993); Cargill v. Turpin, 120 F.3d 1366, 1386 (11th Cir. 1997).

When read against the law of the case doctrine and the prior panel precedent rule, our March 23, 2005 decision establishes the following propositions that we take as given in this appeal: Pub. L. No. 109-3 does not supplant the law applicable to temporary restraining orders or preliminary injunctions, Schiavo I, 2005 WL 648897, at *2; we have appellate jurisdiction over the denial of a temporary restraining order in these circumstances and treat it as the denial of a preliminary injunction or a final judgment, id. at *1; because the other three preliminary injunctive relief factors are present, the merits-related factor is whether the plaintiffs have shown "a substantial case on the merits," id. at *1–2; our review of the district court's denial of preliminary relief is only for abuse of discretion, id. at *2; the district court did not abuse its discretion in denying preliminary relief on the claims raised in the first five counts of the complaint, id.; and injunctive relief under the All Writs Act, 28 U.S.C. § 1651(a), is not appropriate here because it is a

5

situation that falls within the scope of Fed.R.Civ.P. 65 governing temporary restraining orders and preliminary injunctions, Schiavo I, 2005 WL 648897, at *4–5.

We turn now to the claims that were not decided in our prior opinion. Count Six of the amended complaint claims that the defendants' actions violate the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq. We agree with the district court that Defendant Michael Schiavo, as court appointed guardian for Theresa Schiavo, is neither a public entity, pursuant to 42 U.S.C. § 12131(1), nor a public accommodation, pursuant to 42 U.S.C. 12181(7).[1] Our prior decision in this

---

[1] Section 12131(1) defines "public entity" as:
(A) any State or local government;
(B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and
(C) the National Railroad Passenger Corporation, and any commuter authority (as defined in section 24102(4) of Title 49).
42 U.S.C. § 12131(1).

Section 12181(7) provides that:
The following private entities are considered public accommodations for purposes of this subchapter, if the operations of such entities affect commerce—
(A) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor;
(B) a restaurant, bar, or other establishment serving food or drink;
(C) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;
(D) an auditorium, convention center, lecture hall, or other place of public gathering;
(E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;
(F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;

case establishes, as the district court concluded, that Michael Schiavo is not acting under color of state law in these circumstances either. Schiavo I, 2005 WL 648897, at *2 ("For the reasons explained in the district court's opinion, we agree that the plaintiffs have failed to demonstrate a substantial case on the merits of any of their claims."); see also Schiavo ex rel. Schindler v. Schiavo, ___ F. Supp. 2d ___, 2005 WL 648897, App. at *13 (M.D. Fla. Mar. 22, 2005) (finding that the defendants were not acting under color of state law). Under the law of the case doctrine and the prior panel precedent rule, that settles the state action issue.[2]

---

(G) a terminal, depot, or other station used for specified public transportation;
(H) a museum, library, gallery, or other place of public display or collection;
(I) a park, zoo, amusement park, or other place of recreation;
(J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;
(K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and
(L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

42 U.S.C. § 12181(7).

[2] Nonetheless, we take this opportunity to expound on the reasoning behind our first decision's conclusion that the three defendants against whom injunctive relief is sought are not state actors.

Plaintiffs' argument that Michael Schiavo is a state actor is that he is one because he used the state courts to deprive his wife of her rights. To the contrary, "one who has obtained a state court order or judgment is not engaged in state action merely because [he] used the state court legal process." Cobb v. Ga. Power Co., 757 F.2d 1248, 1251 (11th Cir. 1985); see also Harvey v. Harvey, 949 F.2d 1127 (11th Cir. 1992) (no state action where husband used courts to have his wife committed to a state mental hospital, because "[u]se of courts by private parties does not constitute an act under color of state law"); Dahl v. Akin, 630 F.2d 277, 281 (5th Cir. 1980).

Plaintiffs argue that Judge Greer is a state actor simply because he is a state judge. That does not follow. See Paisey v. Vitale, 807 F.2d 889, 893–94 (11th Cir. 1986) ("Obviously the mere fact that Judge Vitale is named as a defendant does not create the requisite state involvement," because "[p]roviding a neutral forum for adjudication is an essentially neutral act.").

7

The district court is also correct that Defendant Hospice of Florida Suncoast, Inc. is not a "public entity" within the meaning of the ADA. See 42 U.S.C. §§ 12131(1)(A)–(C). Assuming it is a place of "public accommodation," the plaintiffs still have not made a substantial showing on this claim. The Hospice did not remove nutrition and hydration and withhold medication from Theresa Schiavo "on the basis of [her] disability." Instead, the Hospice took these actions pursuant to a valid court order. The ADA was never intended to provide an avenue for challenging court orders in termination of care cases. See Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) (concluding that the ADA "would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners" and that the statute "does not create a remedy for medical malpractice"); see also Cash v. Smith, 231 F.3d 1301, 1305 n.2 (11th Cir. 2000) ("Cases decided under the Rehabilitation Act are precedent for cases under the ADA, and vice-versa.").

Count Seven asserts a claim against the Defendant Hospice under § 504 of the Rehabilitation Act of 1973, as amended, 29 U.S. § 794. As the district court explained, Theresa Schiavo is not "otherwise qualified" within the meaning of this

_____

Finally, plaintiffs contend that the Hospice is a state actor because it receives Medicare and Medicaid money. The Supreme Court has repeatedly held, however, that federal money does not transform private persons or entities into state actors. See, e.g., S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm., 483 U.S. 522, 544, 107 S. Ct. 2971, 2985 (1987); Blum v. Yaretsky, 457 U.S. 991, 1011, 102 S. Ct. 2777, 2789 (1982); Rendell-Baker v. Kohn, 477 U.S. 830, 840, 102 S. Ct. 2764, 2770 (1982).

Act "because she would not have had any need for a feeding tube to deliver nutrition and hydration but for her medical condition." Schiavo ex rel. Schindler v. Schiavo, ___ F. Supp. 2d ___, 2005 WL 677224, at *3 (M.D. Fla. Mar. 25, 2005); see Grzan v. Charter Hosp. of Northwest Indiana, 104 F.3d 116, 121 (7th Cir. 1997) ("Grzan is not 'otherwise qualified' because, absent her handicap, she would not have been eligible for treatment in the first place."). The Rehabilitation Act, like the ADA, was never intended to apply to decisions involving the termination of life support or medical treatment. See United States v. Univ. Hosp., State Univ. of N.Y., 729 F.2d 144, 156 (2d Cir. 1984) ("If [C]ongress intended section 504 to apply in this manner, it chose strange language indeed."); id. at 157 ("The legislative history, moreover, indicates that [C]ongress never contemplated that section 504 would apply to treatment decisions of this nature."); Johnson v. Thompson, 971 F.2d 1487, 1493–94 (10th Cir. 1992) (agreeing with University Hospital and stating that "[o]rdinarily, however, if a person were not so handicapped, he or she would not need the medical treatment and thus would not 'otherwise qualify' for the treatment").

Count Eight is a procedural due process claim asserting that under Cruzan v. Mo. Dep't of Health, 497 U.S. 261, 110 S. Ct. 2841 (1990), the Due Process Clause requires that decisions to remove hydration and nutrition from an

9

incapacitated person must be supported by clear and convincing evidence that she would have made the same decision, and that there was not enough evidence in this case to meet that standard.  The plaintiffs assured the district court that this was a procedural due process claim.  Schiavo ex rel. Schindler v. Schiavo, ___ F. Supp. 2d ___, 2005 WL 677224, at *4 (M.D. Fla. Mar. 25, 2005) (district court order denying plaintiffs' second motion for a temporary restraining order); Tr. pt. I at 16, pt. II at 15 (Mar. 24, 2005 oral arg. before the district court). The plaintiffs have no substantial case on the merits as to this claim for at least two independently adequate reasons.

First, Cruzan did not establish that the Constitution requires application of a clear and convincing evidence standard before termination of care.  The Supreme Court held in Cruzan only that a state could, if it wished, require that evidence of the incompetent's wishes be proven by clear and convincing evidence.  Id. at 280, 110 S. Ct. at 2852 ("The question, then, is whether the United States Constitution forbids the establishment of this procedural requirement by the State.  We hold that it does not."); id. at 284 ("In sum, we conclude that a State may apply a clear and convincing evidence standard in proceedings where a guardian seeks to discontinue nutrition and hydration of a person diagnosed to be in a persistent vegetative state.").

10

Of course, holding that states may permissibly impose a requirement says nothing about whether states must impose it. One need look no further than the Cruzan opinion itself for that truism. Referring to a previous decision upholding a state's favored treatment of family relationships in termination of care situations, the Court explained, "such a holding may not be turned around into a constitutional requirement that a state must recognize the primacy of those relationships in a situation like this." Id. at 286, 110 S. Ct. at 2855. In case we missed the point, the Court reiterated it when discussing another decision: "Here again petitioners would seek to turn a decision which allowed a State to rely on family decisionmaking into a constitutional requirement that the State recognize such decisionmaking. But constitutional law does not work that way." Id.

Second, even if constitutional law did work the way the plaintiffs want, contrary to the explicit teaching of the Supreme Court in the Cruzan opinion itself, they would still not have a substantial case on this claim. Plaintiffs would not, because Florida has adopted the very requirement that they say the Constitution mandates, a clear and convincing evidence standard, In re Guardianship of Browning, 568 So. 2d 4, 15 (Fla. 1990), and it was applied by the state courts in this case, In re Guardianship of Schiavo, 780 So. 2d 176, 179 (Fla. 2d DCA 2001). The plaintiffs argue that the state courts should have concluded that the clear and

11

convincing evidence standard was not met in this case, but a quarrel with the result of a proceeding does not state a claim that due process was not afforded. Stated differently, procedural due process does not guarantee a particular result.

The claim in Count Nine, that the defendants' actions violate the Eighth Amendment's prohibition against cruel and unusual punishment, is plainly without merit. That constitutional provision applies only to punishments inflicted after conviction for crimes, not to life support or medical treatment decisions. See Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 262–63, 109 S. Ct. 2909, 2913 (1989) ("The eighth amendment is addressed to courts of the United States exercising criminal jurisdiction . . . ." (quoting Ex parte Watkins, 32 U.S. (7 Pet.) 568, 573–74 (1833)); Ingraham v. Wright, 525 F.2d 909, 912–913 (5th Cir. 1976) (en banc), aff'd, 430 U.S. 651, 97 S. Ct. 1401 (1977) ("Not only the connotation of the words 'bail,' and 'fine,' but the legislative history concerning enactment of the bill of rights supports an argument that the Eighth Amendment was intended to be applied only to punishment invoked as a sanction for criminal conduct." (footnote omitted)).

Count Ten claims that the Fourteenth Amendment Due Process Clause is violated when any person is deprived of nutrition and hydration against her wishes. To support this proposition, plaintiffs again rely on Cruzan, the narrow holding of

12

which we have already discussed at length. To the extent they claim a right to procedural due process—and the supplemental motion in support of this count that they filed in the district court indicates that is their specific claim—it has been afforded in abundance. As Florida's Second District Court of Appeal observed, "Not only has Mrs. Schiavo's case been given due process, but few, if any, similar cases have ever been afforded this heightened level of process." In re Guardianship of Schiavo, ___ So. 2d ___, 2005 WL 600377, at *3 (Fla. 2d DCA Mar. 16, 2005); id. at *5 n.1 (listing twenty-one different proceedings in the case).

To the extent plaintiffs claim a substantive due process right, there is no authority to support their position. We are mindful that the Supreme Court has described itself as having "always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." Collins v. City of Harker Heights, Texas, 503 U.S. 115, 125, 112 S. Ct. 1061, 1069 (1992). As a result, "[t]he doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field." Id. The Court has specifically held that the substantive due process component of the Due Process Clause does not require a state to protect its citizens against injury by non-state actors. DeShaney v. Winnebago County Dep't of Social Serv., 489 U.S. 189, 195, 109 S.

13

Ct. 998, 1003 (1989) ("[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors."); accord Lovins v. Lee, 53 F.3d 1208, 1209 (11th Cir. 1995) (no general substantive due process right to be protected against criminals even when they were wrongfully released). As we have already explained, the defendants are not state actors for present purposes.[3]

The district court's denial of the temporary restraining order is

AFFIRMED.[4]

---

[3] Making decisions and drafting and revising opinions to explain those decisions under the time pressures that these type of emergency matters impose is a difficult process and one in which error can occur. In the process of researching the new issues and writing this opinion, we discovered that the final version of the majority opinion we issued in the prior appeal three nights ago inadvertently failed to attribute two sentences that we used from a prior Florida state appellate court opinion. Compare Schiavo I, 2005 WL 648897, at *5, with In re Guardianship of Schiavo, 2005 WL 600377, at *4. We are thankful that we discovered that omission in time to properly acknowledge the source of the words in this opinion. Our former opinion will be promptly corrected to add the appropriate citation.

[4] As we said three nights ago: A petition for rehearing or suggestion for rehearing en banc is not, of course, required before a petition for certiorari may be filed in the United States Supreme Court. If, however, a petition for rehearing or rehearing en banc is to be filed, it must be filed by 8:00 a.m. ET, March 26, 2005. See Fed.R.App.P. 35(c) & Fed.R.App.P. 40(a)(1).

WILSON, Circuit Judge, concurring:

I concur in the result for the reason that the plaintiffs have been unable to come forward in their second amended complaint with any new claims palpably alleging the denial of a right secured by the Constitution or laws of the United States.

# APPENDIX TO THE COURT'S OPINION

**THERESA MARIE SCHINDLER SCHIAVO, Incapacitated ex rel., ROBERT SCHINDLER and MARY SCHINDLER, her Parents and Next Friends, Plaintiffs, vs. MICHAEL SCHIAVO, as Guardian of the Person of Theresa Marie Schindler Schiavo, Incapacitated, JUDGE GEORGE W. GREER and THE HOSPICE OF THE FLORIDA SUNCOAST, INC., Defendants.**

**Case No. 8:05-CV-530-T-27TBM**

**UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA, TAMPA DIVISION**

*2005 U.S. Dist. LEXIS 4609*

**March 25, 2005, Decided**

**COUNSEL: [*1]** For Theresa Marie Schindler Schiavo, incapacitated ex rel, Robert Schindler and Mary Schindler, her parents and next friends, Plaintiff: David G. Gibbs, III, Gibbs Law Firm, Seminole, FL; George R. Tragos, Law Office of George E. Tragos, Clearwater, FL; Robert A. Destro, Columbus School of Law, Washington, DC.

For Michael Schiavo, as guardian of the person of Theresa Marie Schindler Schiavo, incapacitated, Defendant: George J. Felos, Felos & Felos, P.A., Dunedin, FL; Iris Bennett, Jenner & Block LLC,

# APPENDIX TO THE COURT'S OPINION

Washington, DC; Randall C. Marshall, American Civil Liberties Union Foundation of Florida, Inc., Miami, FL; Rebecca H. Steele, ACLU Foundation of Florida, Inc., West Central Florida Office, Tampa, FL; Robert M. Portman, Jenner & Block LLC, Washington, DC; Thomas J. Perrelli, Jenner & Block, Washington, DC.

For Judge George W. Greer, Defendant: Barry A. Cohen, Cohen, Jayson & Foster, P.A., Tampa, FL.

For The Hospice of the Florida Suncoast, Inc., Defendant: Gail Golman Holtzman, Constangy, Brooks & Smith, LLC, Tampa, FL; John W. Campbell, Constangy, Brooks & Smith, LLC, Tampa, FL; Robin G. Midulla, Robin Greiwe Midulla, P.A., Tampa, FL.

For Liberty Counsel, Inc., Amicus: [*2] Erik W. Stanley, Liberty Counsel, Longwood, FL.

For United States, Interested Party: Paul I. Perez, U.S. Attorney's Office, Middle District of Florida, Orlando, FL; Warren A. Zimmerman, U.S. Attorney's Office, Middle District of Florida, Tampa, FL.

For Morton Plant Hospital Association, Inc., Victor E. Gambone, M.D., Morton Plant Mease Primary Care, Inc., Stanton P. Tripodis, M.D., Interested Parties: James

Addison Martin, Jr., Macfarlane Ferguson & McMullen, Clearwater, FL; Jeffrey W. Gibson, MacFarlane Ferguson & McMullen, Clearwater, FL.

For Gordon Wayne Watts, Interested Party: Gordon Wayne Watts, Lakeland, FL.

For State of Florida, Department of Children and Families, Interested Party: Jennifer Stacie Lima-Smith, Florida Department of Children & Families, Tampa, FL.

**JUDGES:** JAMES D. WHITTEMORE, United States District Judge.

**OPINIONBY:** JAMES D. WHITTEMORE

**OPINION:**

### ORDER

**BEFORE THE COURT** is Plaintiffs' (First Amended) Motion for Temporary Restraining Order (Dkt. 34) n1 and Memorandum in Support (Dkt. 39). n2 After notice to the parties, the Court conducted a hearing on March 24, 2005. Upon careful consideration, Plaintiffs' motion (Dkt. 34) is DENIED.

n1 As to Defendant Judge George W. Greer,

# APPENDIX TO THE COURT'S OPINION

Plaintiffs' counsel confirmed at oral argument that Plaintiffs were not seeking injunctive relief as to Judge Greer in his official capacity. **[*3]**

n2 Plaintiffs acknowledge that this Court's decision on the Emergency Motion Temporary Restraining Order which was affirmed by the Eleventh Circuit, resolved all issues with respect to Counts One through Five. Accordingly, the only issue before the Court is the propriety of the injunctive relief requested in Counts Six through Ten.

### *Applicable Standards*

A temporary restraining order protects against irreparable harm and preserves the status quo until a meaningful decision on the merits can be made. *Canal Auth. of State of Florida v. Callaway, 489 F.2d 567, 572 (5th Cir. 1974).* This Court has previously determined and reaffirms that Plaintiffs have established that an irreparable harm will be suffered unless the injunction issues, the threatened injury outweighs any damage the proposed injunction could cause the opposing party and that an injunction would not be adverse to the interests of the public.

Once again the critical issue is whether Plaintiffs have established a substantial likelihood of success on the merits on any one of Counts Six through Ten. n3 A substantial **[*4]** likelihood of success on the merits requires a showing of only *likely* or probable, rather than *certain* success. *Home Oil Company, Inc. v. Sam's East, Inc., 199 F. Supp. 2d 1236, 1249 (M.D. Ala. 2002) (emphasis in original).* Where, as here, the "balance of the equities weighs heavily in favor of granting the [injunction]" the Plaintiffs need only show a "substantial case on the merits." *Garcia-Mir v. Meese, 781 F.2d 1450, 1453 (11th Cir. 1986).* On careful consideration of each count, the Court concludes that Plaintiffs have not shown a substantial case on the merits.

n3 The Act does not address the traditional requirements for temporary injunctive relief. Accordingly, these standards control whether temporary injunctive relief is warranted, notwithstanding Congress's intent that the federal courts determine *de novo* the merits of Theresa Schiavo's claimed constitutional deprivations. *Schiavo v. Schiavo,* No. 05-11556 at 5 (11th Cir. March 23, 2005).

### *Discussion* **[*5]**

# APPENDIX TO THE COURT'S OPINION

Pursuant to Pub. L. No. 109-3 this court has jurisdiction "to hear, determine and render judgment" on the claims brought by Plaintiffs on behalf of Theresa Schiavo "for the alleged violation of any right of Theresa Marie Schiavo under the Constitution or laws of the United States related to the withholding or withdrawal of food, fluids or medical treatment necessary to sustain her life." This Court is to determine *de novo* Plaintiffs' asserted claims as set forth in Counts Six through Ten.

The court must determine whether Plaintiffs have shown a substantial case on the merits of any claim for purposes of temporary injunctive relief. Absent a showing of a deprivation of a constitutional right or violation of a federal law, the *sine qua non* of this Court's jurisdiction under Pub. L. No. 109-3, Plaintiffs cannot establish a substantial likelihood of success on the merits or even a substantial case on the merits.

## -Count Six-

### The Americans with Disabilities Act

In Count Six, Plaintiffs allege that the failure and refusal of Defendant Michael Schiavo to furnish Theresa Schiavo with necessary and appropriate therapy, rehabilitation services and essential **[*6]** medical services and his demand that she be deprived of food and water violate her rights under the Americans with Disabilities Act ("ADA"), *42 U.S.C. § 12101 et. seq.*

(Dkt. 36, P83).

In pertinent part, the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity." *42 U.S.C. § 12132.* To state a claim under Title II of the ADA, a plaintiff must allege: (1) that she is a "qualified individual with a disability;" (2) that she was "excluded from participation in or . . . denied the benefits of the services, programs, or activities of a public entity" or otherwise "discriminated [against] by such entity;" (3) "by reason of such disability." *Shotz v. Cates, 256 F.3d 1077, 1079 (11th Cir. 2001).* Assuming *arguendo* that Theresa Schiavo is a "qualified individual with a disability," Plaintiffs must show that Defendants Michael Schiavo and Hospice are "public entities" that discriminated against her "by reason **[*7]** of" her disability.

Contrary to Plaintiffs' argument, Michael Schiavo, as court appointed guardian for Theresa Schiavo, was not acting under color of state law. *See Harvey v. Harvey, 949 F.2d 1127, 1132-33 (11th Cir. 1992); Kirtley v. Rainey, 326 F.3d 1088, 1092-96 (9th Cir. 2003).* Moreover, Michael Schiavo cannot be a "public entity" under the ADA by virtue of the plain language of the statutory definition, which defines "public entity" as "any

# APPENDIX TO THE COURT'S OPINION

State or local government" or "any department, agency, special purpose district, or other instrumentality of a State or States or local government." *42 U.S.C. § 12131.* Accordingly, Plaintiffs cannot show a substantial likelihood of success on the merits against Michael Schiavo under the ADA.

As to Defendant Hospice, Plaintiffs contend that it is a "public entity" under the ADA because it accepts federal funding. Plaintiffs offer no authority, however, for their contention. Again, the term "public entity" means ". . . any state or local government." Simply put, Plaintiffs have not shown that the Hospice is a "public entity" under the ADA, an essential element of a Title II claim. **[*8]**

Plaintiffs contend in the alternative that Hospice is a "public accommodation" under the ADA. However, the definition "public accommodation" in the statute, *42 U.S.C. § 12181*(7), does not include a facility such as Hospice. Moreover, even if it is assumed *arguendo* that Hospice falls within the definition of "public accommodation," Plaintiffs cannot show a substantial case on the merits against Hospice under the ADA because they have not shown that any alleged discrimination against Theresa Schiavo was by reason of a disability. In order to prevail under Title III of the ADA, a plaintiff generally has the burden of proving: (1) that she is an individual with a disability; (2) that defendant is a place of public accommodation; and (3) that defendant denied her full and equal enjoyment of the goods, services, facilities or privileges offered by defendant (4) on the basis of her disability. *Larsen v. Carnival Corp., Inc., 242 F. Supp. 2d 1333, 1342 (S.D. Fla. 2003).*

Plaintiffs have not shown that Hospice's compliance with the state judge's order to withhold nutrition and hydration constituted discrimination "on the basis of a disability. **[*9]** " For example, it is undisputed that Hospice, when directed by the state court, cooperated in not only the removal of Theresa Schiavo's feeding tube but also its reinsertion. n4 Hospice's conduct therefore, must necessarily have been motivated by the Court's order, not any discriminatory animus toward Theresa Schiavo. For all of these reasons, Plaintiffs cannot establish a substantial likelihood of success on the merits or even a substantial case on the merits.

n4 Plaintiffs reliance on the regulation at 28 C.F.R. § 35.130 is misplaced. That provision merely "clarifies that neither the ADA nor the regulation alters current Federal law ensuring the rights of incompetent individuals with disabilities to receive food, water, and medical treatment." Dept. Of Justice, Section-by-Section Analysis, *56 FR 35694* (July 26, 1991).

# APPENDIX TO THE COURT'S OPINION

*-Count Seven-*

*The Rehabilitation Act of 1973*

In Count Seven, Plaintiffs allege that Hospice of Florida Sun Coast, Inc. violated Theresa Schiavo's right to **[*10]** rehabilitation under the Rehabilitation Act of 1973, § 504, *as amended, 29 U.S.C. § 794.* (Dkt. 36, PP 85-87).

The Rehabilitation Act of 1973 provides that "no otherwise qualified individual with a disability . . . shall, *solely by reason of his or her disability . . .* be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." *29 U.S.C. § 794*(a) *(emphasis added).* The elements of a claim under the Rehabilitation Act are: "(1) that [she] is a 'handicapped individual' under the Act, (2) that [she] is 'otherwise qualified' for the [benefit] sought, (3) that [she] was [discriminated against] solely by reason of [her] handicap, and (4) that the program or activity in question receives federal financial assistance." *Grzan v. Charter Hosp. of Northwest Indiana, 104 F.3d 116, 119 (7th Cir. 1997).* The first and fourth elements are met as Theresa Schiavo is a handicapped individual and Hospice receives federal funds.

The second element requires that Theresa Schiavo be "otherwise qualified," which means that *absent her disability,* she would qualify for **[*11]** the treatment she is being denied. *Id. at 120.* The Rehabilitation Act is intended to ensure that handicapped individuals are not denied access to programs provided to non-handicapped persons. *Id. at 121.* Because of this intended statutory purpose, courts hold that "'the otherwise qualified criteria . . . cannot be meaningfully applied to a medical treatment decision.'" *Id. (quoting United States v. Univ. Hosp. of State Univ. of New York at Stony Brook, 729 F.2d 144, 156 (2d Cir. 1984)).* Theresa Schiavo is not "otherwise qualified" because she would not have any need for a feeding tube to deliver nutrition and hydration but for her medical condition.

Plaintiffs also cannot establish the third element. Hospice is not withholding nutrition and hydration "solely by reason of" Theresa Schiavo's medical condition, but rather because it is complying with a court order and the instructions of her guardian.

Finally, Plaintiffs' attempt to bring an action on Theresa Schiavo's behalf under the Rehabilitation Act for withholding nutrition and hydration fails as the Rehabilitation Act does not mandate the provision of services. *See Olmstead v. L.C. ex rel. Zimring, 527 U.S. 581, 603 n. 14, 144 L. Ed. 2d 540 (1999)* **[*12]** ("We do

# APPENDIX TO THE COURT'S OPINION

not in this opinion hold that the ADA imposes on the States a standard of care for whatever medical services they render, or that the ADA requires States to provide a certain level of benefits to individuals with disabilities.").

Plaintiffs accordingly have not established a substantial likelihood of success on the merits or a substantial case on the merits under the Rehabilitation Act of 1973.

### -Count Eight-

### Violation of Fourteenth Amendment Due Process Right to Substituted Judgment Decision Based on a Clear and Convincing Evidence Standard

Count Eight alleges that Theresa Schiavo's Fourteenth Amendment due process rights were violated in that the state court's order of February 11, 2000, authorizing the discontinuation of hydration and nutrition, "was not supported by clear and convincing evidence that Terri would have made the same decision." (Dkt. 36, P 90). Plaintiffs contend that the state trial judge made a number of evidentiary errors in concluding that Theresa's intentions were established by clear and convincing evidence. Plaintiffs' counsel acknowledged during oral argument that Count Eight presents a procedural due process claim under the **[\*13]** Fourteenth Amendment.

Plaintiffs contend, relying on *Cruzan v. Missouri*

*Dep't of Health, 497 U.S. 261, 111 L. Ed. 2d 224 (1990),* that "the Due Process Clause of the Fourteenth Amendment *requires* that decisions to remove hydration and nutrition from an incapacitated person must be supported by clear and convincing evidence that the incapacitated person would have made the same decision." (Dkt. 36, p 89) *(emphasis added).* Contrary to Plaintiffs' contention, the Supreme Court in *Cruzan* did not mandate application of the heightened clear and convincing evidence standard. The question before the *Cruzan* court was whether the state's application of the heightened evidentiary standard overburdened the patient's right to refuse medical treatment, not whether it adequately protected the patient's right to life.

Given the holding in *Cruzan,* Plaintiffs cannot complain of a deprivation of Theresa Schiavo's Fourteenth Amendment procedural due process rights. The state court judge applied the heightened clear and convincing evidence standard in determining her intentions, as permitted by *Cruzan* and in accordance with *Fla. Stat.* § 765.401(3). n5 To **[\*14]** the extent Plaintiffs complain that the quantum of evidence did not rise to the level of clear and convincing, these claimed evidentiary errors are a matter of state law, not federal constitutional law.

n5 *Fla. Stat.* § 765.401(3) provides, in

# APPENDIX TO THE COURT'S OPINION

pertinent part:

> Before exercising the incapacitated patient's rights to select or decline healthcare, . . . a proxy's decision to withhold or withdraw life-prolonging procedures must be supported by clear and convincing evidence that the decision would have been the one the patient would have chosen had the patient been competent.

### -Count Nine-

### *Violation of Eighth Amendment Prohibition Against Cruel and Unusual Punishment*

Count Nine of the Plaintiffs' Second Amended Complaint alleges that Defendants violated the Eighth Amendment's prohibition against cruel and unusual punishment. Plaintiffs' assert that "Judge Greer and Michael Schiavo, as state actors, have vioated [sic] Terri Schiavo's Eighth Amendment rights by demonstrating a [*15] deliberate indifference to a know [sic], substantial risk of serious harm . . . ." (Dkt. 36, P 101).

The Eighth Amendment, as applied to the states through the Fourteenth Amendment, prohibits the infliction of cruel and unusual punishment. *Hamm v. Dekalb Cty., 774 F.2d 1567, 1571 (11th Cir. 1985)*. The Eighth Amendment's prohibition against cruel and unusual punishment only applies "subsequent to and as a consequence of a person's lawful conviction of a crime." *Id. at 1572*.

The Eighth Amendment is inapplicable to Theresa Schiavo because the state has not "obtained a formal adjudication of guilt." *Id. at 1572 (quoting Ingraham v. Wright, 430 U.S. 651, 671-72, n. 40, 51 L. Ed. 2d 711 (1977))*. Despite Plaintiffs' contentions, Theresa Schiavo is not being "detained" by the state at the Hospice. Finally, as the court has previously noted, Michael Schiavo and Judge Greer are not state actors. *See Kirtley, 326 F.3d at 1092-96; Harvey, 949 F.2d at 133-34; Torres v. First State Bank of Sierra Cty., 588 F.2d 1322, 1326-27 (10th Cir. 1978)*. For these reasons, Plaintiffs cannot [*16] establish a substantial likelihood of success on the merits or a substantial case on the merits on their Eighth Amendment claim.

### -Count Ten-

### *Violation of Fourteenth Amendment Right to Life*

In Count Ten, Plaintiffs allege that "depriving Plaintiff of nutrition and hydration contrary to her wish to live is a violation of her Fourteenth Amendment right

# APPENDIX TO THE COURT'S OPINION

to life." (Dkt. 36, P 104). As in Count Eight, Plaintiffs rely on the Fourteenth Amendment to the United States Constitution which provides that no state shall "deprive any person of life, liberty or property, without due process of law." During oral argument, Plaintiffs' counsel confirmed that Plaintiffs assert a substantive due process claim in Count Ten. The issue presented in Count Ten for purposes of temporary injunctive relief, is whether, consistent with the jurisdictional grant in Pub. L. No. 109-3, Plaintiffs have established a substantial likelihood of success on the merits of their contention.

"A finding that a right merits substantive due process protection means that the right is protected against certain government actions regardless of the fairness of the procedures used to implement them." *McKinney v. Pate, 20 F.3d 1550, 1556 (11th Cir. 1994)* [*17] *(citing Collins v. City of Harker Heights, 503 U.S. 115, 117 L. Ed. 2d 261 (1992)) (internal quotations and citations omitted); see also Zinermon v. Burch, 494 U.S. 113, 125, 108 L. Ed. 2d 100 (1990)*("the Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them'").

As an initial matter, a substantive due process violation requires state action. *DeShaney v. Winnebago Cty. DSS, 489 U.S. 189, 195 (1989)*("nothing in the language of the Due Process Clause itself requires the state to protect the life, liberty, and property of its citizens against invasion by private actors"). For the same reasons that Plaintiffs could not establish state action in their other claims, Plaintiffs have not established state action in Count Ten.

Substantive due process rights are those rights "created by the Constitution," of which "no amount of process can justify [their] infringement." *Vinyard v. Wilson, 311 F.3d 1340, 1356 (11th Cir. 2002).* The plain language of the Fourteenth Amendment contemplates that a person [*18] *can* be deprived of life so long as due process of law is provided. XIV Amend., U.S. Const. ("no State shall. . . deprive any person of life. . . without due process of law"). The "right to life" is accordingly protected by Fourteenth Amendment procedural due process. *Cf. Cruzan, 497 U.S. at 293* (J. Scalia, concurring)("The text of the Due Process Clause does not protect individuals against deprivations of liberty *simpliciter.* It protects them against deprivations of liberty 'without due process of law'"). All of Plaintiffs' procedural due process claims have now been addressed and rejected by this court.

Accordingly, Plaintiffs cannot establish a substantial likelihood of success on the merits or a substantial case on the merits on their Fourteenth Amendment substantive due process claim.

***All Writs Act, 28 U.S.C. § 1651***

# APPENDIX TO THE COURT'S OPINION

The Eleventh Circuit stated that "our decisions make clear that where the relief sought is in essence a preliminary injunction, the All Writs Act is not available because other, adequate remedies at law exist." *Schiavo v. Schiavo,* No. CV-05-00530-T at 9 (11th Cir. March 23, 2005). Accordingly, the **[\*19]** All Writs Act cannot be used here to "evade the requirements for preliminary injunctions." *Id.*

Plaintiffs (First Amended) Motion for Temporary Restraining Order (Dkt. 34) is **DENIED.**

Finally, the court would be remiss if it did not once again convey its appreciation for the difficulties and heartbreak the parties have endured throughout this lengthy process. The civility with which this delicate matter has been presented by counsel is a credit to their professionalism and dedication to their respective clients, and Terri.

**DONE AND ORDERED** in chambers this 25th day of March, 2005.

**JAMES D. WHITTEMORE**

**United States District Judge**